**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GARY TOMCZYK, *Petitioner,* v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 16-72926<br>Agency No. A029-468-078<br>ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the Board of Immigration Appeals

Argued and Submitted En Banc September 21, 2021
Pasadena, California

Filed December 14, 2021
Amended February 11, 2022

Before: Sidney R. Thomas, M. Margaret McKeown, Kim McLane Wardlaw, Ronald M. Gould, Richard A. Paez, Consuelo M. Callahan, Ryan D. Nelson, Eric D. Miller, Kenneth K. Lee, Danielle J. Forrest, and Lawrence VanDyke, Circuit Judges.

Order;
Opinion by Judge Callahan

## SUMMARY[*]

### Immigration

The en banc court filed (1) an order granting the respondent's motion to amend the opinion filed on December 14, 2021; and (2) an amended opinion denying in part and dismissing in part Gary Tomczyk's petition for review of a decision of the Board of Immigration Appeals. In the amended opinion, the en banc court held that an individual's inadmissible status renders that individual's reentry illegal for purposes of reinstatement of a prior removal order under 8 U.S.C. § 1231(a)(5), regardless of the individual's manner of reentry.

Tomczyk, a citizen of Canada, was deported in July 1990. He reentered in July 1991 after he was waved into the country by an immigration official. More than 25 years later, the Department of Homeland Security ("DHS") reinstated his prior order under § 1231(a)(5), which only requires proof that (1) petitioner is an alien, (2) who was subject to a prior removal order, and (3) who "reentered the United States illegally." A divided three-judge panel of this court granted Tomczyk's petition for review, holding that his reentry was not illegal because he was purportedly waved into the country, and that a noncitizen's status of inadmissibility, standing alone, was insufficient to render the reentry illegal.

The en banc court concluded that DHS did not err in reinstating Tomczyk's removal order. Observing that the Immigration and Nationality Act does not define the phrase,

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"reentered the United States illegally," the en banc court looked to the language's ordinary meaning. Applying the ordinary and commonly understood meaning of "illegal," as reflected in dictionary definitions, the en banc court concluded that a noncitizen reenters "illegally" when the noncitizen is forbidden by law from gaining admission into the country.

Addressing whether Tomczyk was legally permitted to reenter in July 1991, the en banc court explained that he had been deported in part under a drug-related ground of inadmissibility and there was no indication that he had obtained a waiver of inadmissibility. Nor did Tomczyk cite any authority suggesting that the manner of his reentry effected a waiver. Because the law forbade Tomczyk from gaining admission in July 1991, the en banc court concluded that his reentry while inadmissible was illegal as a matter of law. The en banc court observed that its conclusion is consistent with the court's precedent, which in turn is consistent with the interpretations of the two other circuits to have addressed this question.

Tomczyk next argued that the government should be estopped from claiming that he reentered illegally because the government had given him a notice at the time of his deportation, which stated that, if he desired to reenter within one year, he would have to request permission to reapply for admission and stated that reentry within a year without permission would subject him to prosecution. Tomczyk claimed that he chose to wait more than a year before reentering because he interpreted this notice to mean that he would then be free to reenter. The en banc court rejected his argument, observing that the record contained no indication of government misconduct and that Tomczyk had no right to reenter the country in July 1991 or anytime thereafter. Thus,

the en banc court concluded that neither the issuance of the notice nor the border official's decision to wave Tomczyk into the country deprived him of any rights to which he otherwise would have been entitled.

Tomczyk also contended that § 1231(a)(5) could not be applied retroactively against him. The en banc court rejected this argument, explaining that Tomczyk had no pending application when the law came into effect and that merely being eligible to apply for relief in the future was insufficient.

Finally, the en banc court rejected Tomczyk's due process arguments. First, as to his contention that the reinstatement arbitrarily denied him the ability to remain in the United States with his United States Citizen wife, thus depriving him of family unity, the en banc court explained that the court previously rejected this argument. Second, Tomczyk argued that his original removal proceedings were fundamentally flawed because there was inadequate evidence to support the determination that he was inadmissible. Because Tomczyk failed to allege a gross miscarriage of justice that might permit review of his underlying order and because he failed to previously exhaust these arguments, the en banc court concluded that it lacked jurisdiction to consider his challenge to the underlying order.

---

## COUNSEL

Xavier Gonzales (argued), Las Vegas, Nevada, for Petitioner.

Walter Manning Evans (argued), Patrick J. Glen, and Bryan S. Beier, Senior Litigation Counsel; John W. Blakeley,

Assistant Director; Jesse Lloyd Busen and Craig A. Newell Jr., Attorneys; Brian M. Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Christopher J. Hajec and Gina M. D'Andrea, Immigration Reform Law Institute, Washington, D.C., for Amicus Curiae Immigration Reform Law Institute.

---

## ORDER

The respondent's motion to amend the opinion (Dkt. No. 99) is **GRANTED**. The Opinion filed on December 14, 2021, is amended as follows:

On slip opinion page 17, lines 6–9, replace <The fact that Tomczyk would not be subject to criminal sanctions if he waited more than one year to reenter did not imply that he would be eligible to be admitted at that point.> with <Whether or not the notice would have affected the applicability of criminal sanctions (a matter not before the Court), it did not address the civil and administrative requirements Tomczyk would have to meet to lawfully re-enter the United States.>

The Clerk shall file the amended opinion submitted with this Order.

---

## OPINION

CALLAHAN, Circuit Judge:

The primary question presented in Gary Tomczyk's petition is whether an inadmissible and previously-deported noncitizen who is mistakenly waved into the United States by a border official has illegally reentered the country within the meaning of 8 U.S.C. § 1231(a)(5). Applying the plain language of the statute, we hold that an individual's inadmissible status renders that individual's reentry illegal regardless of the manner of reentry. In doing so, we reaffirm the holdings of two of our prior published opinions, which are in turn consistent with the interpretation of § 1231(a)(5) adopted by the two other circuits to have squarely addressed this issue. Because Tomczyk was a noncitizen subject to a previous removal order who illegally reentered the United States, the Department of Homeland Security ("DHS") did not err in reinstating Tomczyk's removal order.

Tomczyk also asserts that the reinstatement of the removal order violates due process because it interferes with his right to remain in the United States with his wife and because insufficient evidence supported his original removal order. We find that the former argument lacks merit and that we lack jurisdiction to consider the latter. Accordingly, we deny Tomczyk's petition in part and dismiss it in part.

### I

Tomczyk is a Canadian citizen. On June 28, 1990, an immigration judge ordered that Tomczyk be "excluded and deported" from the United States under two provisions of a statute in effect at the time, 8 U.S.C. §§ 1182(a)(20), (23) (1988). At that time, § 1182(a)(20) stated that noncitizens who lacked the necessary documents (such as an immigrant

visa) "shall be excluded from admission into the United States," while § 1182(a)(23) similarly excluded noncitizens, who like Tomczyk, had certain drug-related convictions or noncitizens whom immigration officials knew or had reason to believe were involved in illicit drug trafficking. 8 U.S.C. §§ 1182(a)(20), (23) (1988). When Tomczyk was deported to Canada on July 2, 1990, he was given a notice stating in relevant part that:

> If after your deportation is effected, you desire to reenter the United States within one year from the date of such deportation, you must, prior to commencing your travel to this country, request permission from the Attorney General to reapply for admission to the United States. . . .
>
> Your reentry within one year of the date of your deportation without the express permission of the Attorney General will subject you to prosecution as a felon and, if convicted therefor, you could be sentenced to imprisonment for not more than two years or fined not more than $1000, or both.

Tomczyk reentered the United States sometime in July 1991 after he and another individual riding in a van were allegedly "waved into the country" by an immigration official at the Canadian border. The record does not indicate the precise date of his reentry, but the government does not contest (at least for purposes of adjudicating this petition) Tomczyk's assertion that more than a year had passed since he had been deported.

More than 25 years later, Tomczyk was arrested in Las Vegas, Nevada, for driving under the influence of alcohol. Immigration and Customs Enforcement officials subsequently took Tomczyk into custody after discovering that Tomczyk had previously been deported and did not have valid immigration documents allowing him to be present in the United States. DHS then reinstated his prior removal order under § 1231(a)(5) on the ground that Tomczyk had illegally reentered the United States after being previously removed.[1]

Tomczyk filed this petition for review of the reinstatement order. A divided three-judge panel of this court granted the petition. *Tomczyk v. Wilkinson*, 987 F.3d 815 (9th Cir. 2021). The majority held that Tomczyk's reentry was not illegal within the meaning of § 1231(a)(5) because he was purportedly waved into the country by a border official, and that "a noncitizen's status of inadmissibility, standing alone," was insufficient to render the reentry illegal. *Id.* at 822. Instead, the majority stated that "the act of 'reenter[ing] . . . illegally' under § 1231(a)(5) requires some form of misconduct by the noncitizen—such as entering without inspection, entering in violation of a requirement to obtain advance consent from the Attorney General, or procuring admission by fraud—rather than merely the status of inadmissibility." *Id.* at 825 (alteration and omission in original). The panel remanded for DHS to either place Tomczyk in regular removal proceedings or "determine on a more developed factual record" whether

[1] Following the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), certain immigration law terminology changed. For example, "[w]hat was formerly known as 'deportation'" in 1991 is now referred to as "removal." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006).

Case: 16-72926, 02/11/2022, ID: 12367298, DktEntry: 100, Page 9 of 20

Tomczyk engaged in misconduct sufficient to meet this standard at the time of his reentry. *Id.* at 826. Judge Bybee dissented on the ground that Tomczyk's inadmissible status alone rendered Tomczyk's reentry unlawful, and that the majority's contrary holding was inconsistent with our prior decisions in *Tamayo-Tamayo v. Holder*, 725 F.3d 950 (9th Cir. 2013), and *Tellez v. Lynch*, 839 F.3d 1175 (9th Cir. 2016). *Tomczyk*, 987 F.3d at 826 (Bybee, J., dissenting). We subsequently voted to rehear the case en banc. *Tomczyk v. Garland*, 2 F.4th 793 (9th Cir. 2021).

II

The government's ability to reinstate a prior order of removal is governed by § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id.* "[R]einstatement only requires proof that (1) petitioner is an alien, (2) who was subject to a prior removal order, and (3) who illegally reentered the United States." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc). These determinations are made by an immigration officer, and a noncitizen who has illegally reentered the country after having previously been removed "has no right to a hearing before an immigration judge in such circumstances." 8 C.F.R. § 241.8(a); *see also Morales-*

*Izquierdo*, 486 F.3d at 495, 497. We review legal questions raised in a petition for review of a reinstatement order de novo and any factual findings for substantial evidence. *Ixcot v. Holder*, 646 F.3d 1202, 1206 (9th Cir. 2011). Our consideration of the petition is limited to the administrative record and "confirming the agency's compliance with the reinstatement regulations." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137 (9th Cir. 2008); *see also* 8 U.S.C. § 1252(b)(4)(A).

A

Tomczyk primarily argues that, because a border official allegedly allowed him to enter the United States in July 1991, his reentry was not illegal within the meaning of § 1231(a)(5). "[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Because the Immigration and Nationality Act ("INA") does not define what it means to have "reentered the United States illegally," we look to the language's ordinary meaning. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018); 8 U.S.C. §§ 1101, 1231.

"To determine ordinary meaning, we consider dictionary definitions." *United States v. Cox*, 963 F.3d 915, 920 (9th Cir. 2020); *see also Lamar, Archer & Cofrin, LLP*, 138 S. Ct. at 1759. At the time IIRIRA was enacted, Black's Law Dictionary defined "illegal" to mean "[a]gainst or not authorized by law." *Illegal*, Black's Law Dictionary (6th ed. 1991). The Oxford English Dictionary similarly defined it to mean "[n]ot legal or lawful; contrary to, or forbidden by, law." *Illegal*, Oxford English Dictionary (2d ed. 1989). Applying this ordinary and commonly understood meaning to § 1231(a)(5), a noncitizen therefore reenters the United States "illegally" when the noncitizen is forbidden by law

Case: 16-72926, 02/11/2022, ID: 12367298, DktEntry: 100, Page 11 of 20

from gaining admission into the country. *See Mendoza v. Sessions*, 891 F.3d 672, 680 (7th Cir. 2018) (determining that § 1231(a)(5) "is not ambiguous" and that petitioner illegally reentered where he was inadmissible under § 1182(a)(9)(A), regardless of whether he had been waved into the country).

The question is thus whether Tomczyk was legally permitted to reenter the United States in July 1991. Whether a noncitizen is inadmissible is—and was at the time of Tomczyk's reentry—governed by § 1182(a), which sets forth numerous ways in which a noncitizen may be deemed inadmissible and "ineligible to be admitted to the United States."[2] In 1991, one of those grounds of inadmissibility applied to:

> Any alien who —
>
> (A) has been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21); or
>
> (B) the consular officers or immigration officers know or have reason to believe is or has been an illicit trafficker in any such controlled substance or is or has been a knowing assistor, abettor, conspirator, or

[2] The version of § 1182(a) in effect in 1991 used slightly different language, stating that inadmissible noncitizens "shall be excluded from admission into the United States." 8 U.S.C. § 1182(a) (1988).

> colluder with others in the illicit trafficking in any such controlled substance[.]

8 U.S.C. § 1182(a)(23) (1988).

Tomczyk was deported in 1990 in part under this provision.[3] The record contains no indication that Tomczyk applied for, let alone received, a waiver of inadmissibility between his deportation in July 1990 and his reentry in July 1991, and Tomczyk does not argue otherwise. *See* 8 U.S.C. § 1182(d)(3)(B) (1988) (permitting a noncitizen who was otherwise inadmissible under certain provisions of § 1182(a) to apply for temporary admission). Nor does Tomczyk cite any authority suggesting that the INA permitted a border official to effectively grant such a waiver merely by allowing the vehicle in which he traveled to cross the border. Tomczyk's qualifying conviction thus rendered him ineligible to be admitted to the United States at the time of

---

[3] Tomczyk was also deported in 1990 on the ground that he was inadmissible under § 1182(a)(20) (1988), which applied to:

> any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General [under 8 U.S.C. § 1181(a).]

While the government's initial respondent's brief cited this as an additional ground on which Tomczyk was inadmissible at the time of his reentry, its subsequently filed supplemental brief relies exclusively on Tomczyk's inadmissibility under § 1182(a)(23) (1988). Because we agree that Tomczyk was inadmissible under § 1182(a)(23), we need not address whether he was also inadmissible under § 1182(a)(20).

his reentry. 8 U.S.C. § 1182(a)(23) (1988). Because the law forbade Tomczyk from gaining admission into the United States in July 1991, we hold that his reentry was illegal under the plain meaning of § 1231(a)(5).

This interpretation is consistent with our prior decisions addressing this same issue. In *Tamayo-Tamayo v. Holder*, 725 F.3d 950 (9th Cir. 2013), a previously removed petitioner reentered the United States after presenting an expired permanent resident card to a border official. *Id.* at 951–52. The government then sought to reinstate the petitioner's removal order under § 1231(a)(5). *Id.* at 952. We rejected the petitioner's argument that his reentry had been lawful because a border official waved him into the country. We determined that when the petitioner reentered the country, "he lacked valid documentation that permitted him to enter. Accordingly, he was inadmissible under § 1182(a)(7)(A)(i)(I), as an alien 'who is not in possession of a valid unexpired [authorization document],' and his entry was illegal." *Id.* at 952 (alteration in original) (quoting 8 U.S.C. § 1182(a)(7)(A)(i)(I)). We concluded that "Petitioner's *substantively illegal reentry met the requirement* in § 1231(a)(5) that he had 'reentered the United States illegally,' notwithstanding the fact that he tricked the border official into allowing him physically to enter." *Id.* at 953 (emphasis added) (quoting 8 U.S.C. § 1231(a)(5)).

We reached the same conclusion in *Tellez v. Lynch*, 839 F.3d 1175 (9th Cir. 2016). There, the petitioner attempted to enter the United States without a "valid entry document" and was issued an expedited removal order and removed. *Id.* at 1177. When the petitioner attempted to reenter the country the following week, "[s]he 'dressed up in a nice, pretty dress,' and 'smile[d] at the immigration

officer' from the passenger seat of a car," and this time an immigration officer waved the car through the checkpoint. *Id.* (second alteration in original). In challenging the government's reinstatement of her removal order, Tellez claimed "that she did not reenter the United States illegally . . . because she presented herself at the border and was waved through without question." *Id.* at 1178. We rejected this argument, noting that "a successful entry can still be an illegal entry." *Id.* We also characterized *Tamayo-Tamayo* as "holding . . . that an entry was illegal *because* petitioner 'lacked valid documentation that permitted [the petitioner] to enter.'" *Id.* at 1178–79 (quoting *Tamayo-Tamayo*, 725 F.3d at 952) (emphasis added). We concluded that "[a] pretty dress and charming smile are not substitutes for a visa. Her reentry was illegal." *Id.* at 1179; *see also* 8 U.S.C. § 1182(a)(7)(A)(i)(I) (stating that noncitizens who, among other things, are "not in possession of a valid unexpired immigrant visa" are inadmissible).

The two other circuits to have addressed this question also agree with our precedent. In *Cordova-Soto v. Holder*, 659 F.3d 1029 (10th Cir. 2011)—which we cited in *Tamayo-Tamayo*, 725 F.3d at 953—the Tenth Circuit noted that the petitioner's failure to seek the Attorney General's authorization to reenter (as she was required to do under the terms of her prior order of removal) rendered her inadmissible under § 1182(a)(9)(A)(ii). *Cordova-Soto*, 659 F.3d at 1035. The court held that inadmissibility under § 1182(a) alone was sufficient to render her reentry illegal. *Id.* ("Because she could not have entered the United States legally at that time, her reentry was illegal . . . .").

Similarly, in *Mendoza v. Sessions*, the Seventh Circuit held that a petitioner who had reentered the United States after being waved across the border by two officers had

nevertheless reentered the country illegally. 891 F.3d at 674, 680. There, an order prohibited the petitioner "from returning to the United States for five years unless he obtained permission from the Attorney General." *Id.* at 674. The court held that the petitioner's reentry violated "at least two laws"—8 U.S.C. § 1326(a) and § 1182(a)(9)(A)—and therefore that the reentry was illegal under the plain meaning of § 1231(a)(5). *Id.* at 680. The court further emphasized that whether a noncitizen "engaged in some act of deception" during the noncitizen's reentry was "not relevant to the core analysis" under § 1231(a)(5), and that "Congress could not have intended for such a reentry to be considered lawful merely because a border inspector mistakenly waved the violator into the country." *Id.*

At oral argument on rehearing, Tomczyk's counsel asserted that § 1231(a)(5)'s reference to an individual who has "reentered the United States illegally" is commonly understood to be limited to "a person who is subject to criminal prosecution who enters unlawfully," in the sense that the act of reentry involved criminal conduct. We disagree. Nothing in the text of § 1231(a)(5) suggests that this provision is limited to instances where a noncitizen committed a criminal violation. Moreover, Tomczyk provides no support for his suggestion that reentering "illegally" is commonly understood to imply the presence of criminal conduct. Tomczyk's characterization is belied by the dictionary definitions set forth above, as well as our prior opinions and those of our sister circuits interpreting and applying this unambiguous language.

Tomczyk also contends that his reentry was not illegal because, at the time, Canadian citizens were not required to provide border officials with a visa or passport to enter the United States for a temporary visit, and Tomczyk claims he

did not intend to permanently remain in the country at the time of his reentry. 8 C.F.R. § 212.1(a) (1991). This appears to be a response to the claim that Tomczyk remained inadmissible in July 1991 because he lacked valid entry documents under § 1182(a)(20) (1988). But the government does not solely rely on this ground of inadmissibility in arguing his reentry was illegal. *See supra* n.3. Instead, the government correctly notes that Tomczyk's status as a noncitizen with a drug conviction rendered him inadmissible regardless of whether he had entry documentation or how long he initially intended to stay in the country. 8 U.S.C. § 1182(a)(23) (1988).[4]

In July 1991, Tomczyk lacked legal authorization to enter the United States. His reentry into the country while inadmissible was thus illegal as a matter of law within the meaning of § 1231(a)(5), notwithstanding the fact that a border official mistakenly waved him into the country. DHS did not err in reinstating his removal order on this basis.

B

Tomczyk next argues that the government should be estopped from claiming that he reentered the United States illegally because the government purportedly told him that he was only barred from returning to the country for one year following his deportation. Tomczyk bases this contention on the notice he received from the government at the time of his deportation, which stated in relevant part that if Tomczyk

[4] Tomczyk also argues that he was not inadmissible under § 1182(a)(23) (1988) at the time of his reentry because the government never proved that he had a qualifying conviction in his original removal proceedings. This amounts to a collateral attack on his original removal order and, for the reasons discussed below in Part III, we lack jurisdiction over this claim.

wished to return to the United States "within one year from the date of such deportation, [he] must, prior to commencing [his] travel to this country, request permission from the Attorney General to reapply for admission to the United States." The notice further stated that, if Tomczyk attempted to reenter without advance permission during this period, he would be subject "to prosecution as a felon and, if convicted therefor, [he] could be sentenced to imprisonment for not more than two years or fined not more than $1000, or both." Tomczyk claims that he chose to wait more than a year before reentering because he interpreted this notice to mean that he would then be free to reenter the United States at that time.

A party seeking to assert estoppel against the federal government must show that the government engaged in "affirmative misconduct going beyond mere negligence," and even then, estoppel will only apply "where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Mukherjee v. INS*, 793 F.2d 1006, 1008–09 (9th Cir. 1986) (internal citations and quotation marks omitted). Further, "estoppel against the government is unavailable where petitioners have not lost any rights to which they were entitled." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

The record contains no indication that the government engaged in any misconduct. The notice accurately warned Tomczyk that he would face criminal prosecution if he attempted to reenter within one year without the advance permission of the Attorney General. 8 U.S.C. §§ 1182(a)(16), 1326(a) (1988). Whether or not the notice would have affected the applicability of criminal sanctions (a matter not before the Court), it did not address the civil

and administrative requirements Tomczyk would have to meet to lawfully re-enter the United States. Rather, having previously been deemed inadmissible under § 1182(a)(23) (1988), Tomczyk had no right to reenter the United States in July 1991 or any time thereafter. *See* 8 U.S.C. § 1182(a)(23) (1988). Therefore, neither the issuance of the notice nor the border official's decision to wave Tomczyk into the country deprived Tomczyk of any rights to which he otherwise would have been entitled. Accordingly, DHS is not estopped from seeking to reinstate Tomczyk's removal order.

C

Tomczyk also contends that § 1231(a)(5), which was enacted as part of IIRIRA and did not become effective until 1997, cannot be applied retroactively against him. *See Fernandez-Vargas*, 548 U.S. at 33–36 (describing IIRIRA's changes to the pre-existing reinstatement procedures). Tomczyk acknowledges that the Supreme Court has held that § 1231(a)(5) applies to noncitizens who reentered before IIRIRA's effective date and remained in the country after that date. *Id.* at 33, 44. Nevertheless, Tomczyk asserts an exception based on our decision in *Ixcot v. Holder*, 646 F.3d 1202 (9th Cir. 2011), which held that § 1231(a)(5) did not apply retroactively to a noncitizen who "applied for immigration relief prior to IIRIRA's effective date," and thus had a vested right to the adjudication of that application on its merits. 646 F.3d at 1213. Tomczyk contends that his reentry with inspection at a border checkpoint in July 1991 "preserved for himself the ability at some time to apply for adjustment of status," and on this basis he is eligible to apply for relief from removal under *Ixcot*.

Tomczyk's claim lacks merit. Even assuming he did reenter with inspection in July 1991—a fact which the government does not concede—such a reentry was not the

equivalent of applying for immigration relief. *Ixcot* requires that the noncitizen have "affirmatively" acted prior to the enactment of IIRIRA "to change his legal status" such that "his expectation of relief . . . became a 'vested' right that could not be [retroactively] 'impair[ed].'" *Ortega v. Holder*, 747 F.3d 1133, 1134 (9th Cir. 2014) (second alteration in original) (quoting *Ixcot*, 646 F.3d at 1213). Tomczyk admits that he did not apply for an adjustment of status prior to IIRIRA's effective date, and we find that merely being eligible to apply for such relief in the future is insufficient. *See Fernandez-Vargas*, 548 U.S. at 44 n.10 (determining that the creation of a vested right required the noncitizen "to take some action that would elevate [his claim for relief] above the level of hope"). Because Tomczyk had "no pending application at the time the law came into effect," § 1231(a)(5) applies retroactively to him. *Ortega*, 747 F.3d at 1135.

III

Finally, Tomczyk asserts that DHS's reinstatement of the removal order violated his due process rights in two ways.

First, he contends the reinstatement of his removal order "arbitrarily denied [Tomczyk] the ability to remain in the United States with his United States Citizen wife, thus depriving him of family unity." We have previously rejected this argument, holding that the lawful denial of immigration relief does not violate any of a noncitizen's or a noncitizen's family's "substantive rights protected by the Due Process Clause." *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504, 516 (9th Cir. 2012) (en banc); *see also Morales-Izquierdo*, 486 F.3d at 497 (reinstating a removal order "does

not offend due process because reinstatement of a prior order does not change the alien's rights or remedies").

Second, Tomczyk argues that his original removal proceedings were fundamentally flawed because there was inadequate evidence to support the immigration judge's determination that he was inadmissible under §§ 1182(a)(20) and (23) (1988). Tomczyk claims that the immigration judge overlooked the fact that, as a Canadian citizen, he was not required to have a visa to enter the country and thus was not inadmissible under § 1182(a)(20) (1988), and that the government failed to introduce any conviction documents proving he had the type of drug conviction set forth in § 1182(a)(23) (1988).

A petitioner's original removal order "is not subject to being reopened or reviewed" in reinstatement proceedings unless "the petitioner can demonstrate a 'gross miscarriage of justice' in the prior proceedings." 8 U.S.C. § 1231(a)(5); *Garcia de Rincon*, 539 F.3d at 1138. Tomczyk has not shown—nor do his briefs even expressly argue—that a gross miscarriage of justice occurred in his original removal proceedings. Tomczyk does not argue that he was prevented from making any of the arguments he currently raises in those proceedings, nor did he appeal his initial deportation order. Because Tomczyk fails to allege a gross miscarriage of justice and because he failed to previously exhaust these arguments, we lack jurisdiction to consider his challenge to his June 1990 removal order, and this portion of Tomczyk's petition is dismissed. 8 U.S.C. §§ 1231(a)(5), 1252(d)(1).

IV

For the reasons set forth above, Tomczyk's petition for review is **DISMISSED** in part and **DENIED** in part.